IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DEBORAH LAUBSCHER and ROBERT LAUBSCHER, as surviving parents of DANI LAUBSCHER,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>GWINNETT COUNTY,<br><br>*Defendant.* | CIVIL ACTION FILE NO.<br>1:24-cv-1891-LMM |

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

## INTRODUCTION

This is a civil rights case arising from the death of Dani Laubscher, the child of Deborah and Robert Laubscher. Plaintiffs allege that Defendant Gwinnett County (the "County") violated Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act when its police officers shot and killed Dani while Dani was having a mental health crisis. While Dani's death is tragic, Plaintiffs' claims must be dismissed.

Plaintiffs' ADA and Rehabilitation claims against the County fail because Plaintiffs have failed to sufficiently allege that the County had actual knowledge of discrimination and was deliberately indifferent regarding that

known discrimination. Moreover, Plaintiffs' proffered modifications to certain policies and proposed accommodations that the County could have provided Dani are per se unreasonable. Accordingly, Plaintiffs have not plausibly alleged their claims. For these reasons, discussed further below, the Court should GRANT the County's motion to dismiss and DISMISS the claims against it.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' complaint must contain sufficient factual material, accepted as true, such that it states a claim "'that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires factual allegations specific enough "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although well-pleaded factual allegations are entitled to a presumption of truth, courts must nevertheless disregard legal conclusions, generic labels, and unadorned recitations of the elements of a cause of action. *See Iqbal*, 556 U.S. at 678-79.

## BACKGROUND

Plaintiff Deborah Laubscher called 911 on April 30, 2022, reporting that her child, Dani, was behaving erratically. Doc. 1 ¶ 37. Dani was schizophrenic, and Mrs. Laubscher was concerned that Dani was unmedicated or perhaps had taken non-prescribed drugs. *Id.* Mrs. Laubscher was concerned that Dani

"might engage in self harm." *Id.* ¶ 39. Mrs. Laubscher allegedly asked for a crisis intervention team, which she had done in the past for Dani. *Id.* ¶¶ 40-41. The County's crisis intervention team had responded to calls to help Dani in the past, and Plaintiffs fault the crisis intervention team for not involuntarily committing Dani on those past occasions. *Id.* ¶¶ 42-45.

When County "personnel" (presumably firefighters and police officers) arrived, they saw that Dani was having a mental health emergency, behaving erratically, unable to effectively communicate, and unable to follow commands. *Id.* ¶¶ 52-53. County police officers allegedly shouted conflicting orders to Dani, tased Dani, pulled a firefighter off of Dani, and shot and killed Dani. *Id.* ¶¶ 133, 137, 143, 146, 151, 154.

Plaintiffs state that the County sends appropriate medical personnel to calls for physical emergencies, like heart attacks and strokes, but it sends police to mental health emergencies, like suicide calls. *Id.* ¶¶ 61-62. Plaintiffs claim that this conduct constitutes discrimination against those who suffer from mental illnesses. *Id.* ¶ 65. Plaintiffs also allege that County leadership was aware "of the different responses for mental health emergencies versus physical health emergencies." *Id.* Plaintiffs do not allege any past instances where "different responses" caused damages to anyone with a mental health disability. Nonetheless, Plaintiffs maintain that the County knew that it was

riskier to have police, rather than medical providers, respond to calls of uncontrollable and erratic adults. *Id.* ¶ 67.

Plaintiffs allege that in April 2022, the County only staffed one mental health response unit, which is comprised of one mental health clinician and one police officer. *Id.* ¶ 72. Plaintiffs further allege that County police officers are not trained in crisis intervention. *Id.* ¶ 95. Thus, Plaintiffs allege that the County disregarded a risk to mentally disabled individuals by sending police officers to respond to calls concerning mental health crises.

Because of Dani's disability, Plaintiffs allege that the County denied Dani benefits and services and failed to accommodate Dani's disability in violation of Title II of the ADA and Section 504 of the Rehabilitation Act. *Id.* ¶ 197. Specifically, the County denied Dani an accommodation by:

> failing dispatch medical services, failing to provide for the timely response of mental health providers, failing to allow the medically trained responders to provide a medical response, systematically treating mental health symptomology as a crime, failing to implement de-escalation or crisis intervention techniques, and failing to provide effective communication.

*Id.* Plaintiffs do not alleged an excessive force claim.[1]

---

[1] Plaintiffs have, however, filed a state lawsuit against Officer Kevin Mendez for battery, negligence, and infliction of emotional distress. *Laubscher v. Mendez*, 24A02120 (April 8, 2024 DeKalb State Court).

4

## ARGUMENT

Plaintiffs assert two claims against the County: (1) a claim under Title II of the ADA and (2) a claim under Section 504 of the Rehabilitation Act. Doc. 1 ¶¶ 193-206. The same standards govern claims under both Title II and § 504, and courts rely on cases construing Title II and § 504 interchangeably. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019). Here, although not differentiated as separate claims, Plaintiffs appear to assert that the County's policies related to responses to mental health emergencies are deficient and caused Dani's death. Plaintiffs also assert that County police officers failed to accommodate Dani's disability at the scene.

To state a claim under Title II or § 504, Plaintiffs must prove that Dani is a qualified individual with a disability, that Dani was "excluded from participation or denied the benefits of a public entity's service, programs, or activities, or was otherwise discriminated against by the public entity," and that the denial of service was because of Dani's disability. *Ingram v. Kubik*, 30 F.4th 1241, 1256-57 (11th Cir. 2022). Binding precedent forecloses a theory of vicarious liability under the ADA. *Id.* at 1257-59. Rather, when a plaintiff seeks compensatory damages, the Eleventh Circuit has made clear that actual knowledge and deliberate indifference must be shown. *Id.*

I.   **The Court should reject application of Title II of the ADA and § 504 of the Rehabilitation Act to ad hoc police encounters.**

The Eleventh Circuit has "never addressed whether police officers can violate Title II of the ADA." *Estate of Osorio v. Miami-Dade Cnty.*, 717 F. App'x 957, 957 (11th Cir. 2018). In *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1085 (11th Cir. 2007), the Eleventh Circuit assumed without deciding that a claim could arise under Title II of the ADA, but then rejected the plaintiff's claim on the merits. *Id.* at 1085-89; *see Ingram,* 30 F.4th 1241 at 1257. ("Turner argues that . . . Title II does not apply to police encounters. The latter argument *may* conflict with precedent . . . . But we need not address that argument because we conclude that vicarious liability is unavailable." (emphasis added, citing *Bircoll*, 480 F.3d at 1084-85)); *see also Welch v. City of Hartselle*, 423 F. Supp. 3d 1277, 1285 (N.D. Ala. 2019).

The circuits are currently split on this issue. *Compare Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000), *with Haberrle v. Troxell*, 885 F.3d 170, 178-79 (3rd Cir. 2018). And when the Supreme Court granted certiorari to address the issue, the Court ultimately dismissed the question presented as improvidently granted. *City & County of Sacramento v. Sheehan*, 575 U.S. 600, 610 (2015). This Court should side with the Fifth Circuit and hold that Title II of the ADA does not apply to ad hoc police encounters.

6

Title II's discrimination provision, 42 U.S.C. § 12132, cannot be interpreted to reach police officers investigating, arresting, or performing community caretaker functions in exigent circumstances. This sort of activity is not something that the plaintiff "participates" in and from which there may be a "benefit." *See Sheehan*, 575 U.S. at 609 (noting argument). As a matter of text, police activities simply are not encompassed under Title II of the ADA. *See Rosen v. Montgomery County*, 121 F.3d 154, 157 (4th Cir. 1997) ("Rosen clearly has a disability, but calling a drunk driving arrest a 'program or activity' of the County, the 'essential eligibility requirements' of which (in this case) are weaving in traffic and being intoxicated, strikes us as a stretch of the statutory language and of the underlying legislative intent."). Because Title II does not apply to police officers performing police-type activities, the Court should dismiss Plaintiffs' claims.

## II.   Plaintiffs' claims based on the County's policies fail.

According to Plaintiffs, the County does not provide any crisis intervention training to its officers. Doc. 1 ¶¶ 72, 94-113. Also, according to Plaintiffs, the County prioritizes physical health emergencies, like heart attacks and strokes, over mental health emergencies. Plaintiffs base this assertion on the fact that the County usually sends police to mental health calls and because the County only has one crisis intervention team. *Id.* ¶¶ 78, 95. Plaintiffs allege that the County's failure to adopt different policies

7

constituted ADA and Rehabilitation Act violations. *Id.* ¶¶ 197-98. This claim fails, however, because the County did not have actual knowledge of discrimination by the entity and because Plaintiffs' modifications are unreasonable.

For an entity to be liable for discrimination, an official with the authority to address the discrimination and implement change must have actual knowledge of the discrimination and fail to adequately respond. *Ingram*, 30 F.4th at 1259. Here, Plaintiffs do not plead that any official with the County was aware of specific, past instances of discrimination. Rather, Plaintiffs list conclusory failure to train allegations and do not list any prior instances that would put officials on notice for a need to train. Plaintiffs also fault the County's leadership for failing to devote more resources to responding to mental health emergencies. But again, Plaintiffs have not listed prior instances that would put an official on notice that the County's resource allocation constituted discrimination against mentally disabled individuals. Accordingly, Plaintiffs' claims should be dismissed because they have not properly alleged facts that County officials were actually aware of discriminatory policies and were deliberately indifferent to those policies.

But even if County officials had actual notice of discriminatory policies and were deliberately indifferent to the discrimination, Plaintiffs' proposed modifications are unreasonable. While Plaintiffs do not explicitly allege their

specific proposed alternatives to the County's policies, they apparently believe the County should dispatch mental health providers for emergencies, ensure those providers can timely arrive on scene, and cease dispatching police officers to mental health calls. Doc. 1 ¶ 197. In other words, Plaintiffs ask this Court to set the County's policies regarding its response to mental health emergencies.

However, this Court has recently held that it is unwilling to change police policies regarding mental health emergencies. *West v. DeKalb Cnty.*, 1:23-cv-1907-LMM, Doc. 66 at 26, 2024 WL 1010672, at *9-11 (N.D. Ga. Feb. 2, 2024). Specifically, in *West*, a plaintiff brought an ADA Title II claim alleging that a county police department discriminated against those with mental health disabilities by allowing its officers to implement prone restraints— which are known to cause death to those under the effects of excited delirium. *Id.* at *1. This Court stated that such a modification would be unreasonable, and that even though the plaintiffs' decedent was not committing a crime, "neither the Court nor the ADA is well-equipped to influence police policy to the extent that the plaintiff requests." *Id.* at *11.

Similarly, the Eleventh Circuit has rejected an ADA claim that sought to undermine police policies that involve exigencies and quickly changing circumstances. *Bircoll*, 480 F.3d at 1085-87. In *Bircoll*, the Eleventh Circuit affirmed the dismissal of an ADA claim premised on the proposed modification

9

of allowing road-side interpreters to assist in DUI investigations and arrests of deaf persons. The Eleventh Circuit reasoned that because of the "practical and public-safety interests that the police have in quickly testing and securing a DUI suspect," the plaintiff failed to state a claim. *Vila v. Miami-Dade Cnty.*, 65 F. Supp. 3d 1371, 1384 (S.D. Fla. 2014) (explaining the holding in *Bircoll* and similarly rejecting a failure to accommodate claim because of emergent circumstances).

The Court should not force the County to adopt policies that limit police officers' abilities when responding to emergencies. Thus, Plaintiffs' ADA and Rehabilitation Act claims based on the County's policies should be dismissed.

### III. Plaintiffs' claims based on the County's failure to accommodate Dani should be dismissed.

Plaintiffs also allege that the County failed to accommodate Dani's disability at the scene, which caused Dani's death. Doc. 1 ¶¶ 161-192. This claim, like Plaintiffs' claim based on the County's policies, should be dismissed because Plaintiffs have not properly alleged deliberate indifference or proposed any reasonable accommodations.

As explained above, for an entity to be liable under the ADA for its employees' actions, the entity must have actual knowledge of past discrimination and be deliberately indifferent to that discrimination. But Plaintiffs have not alleged any past instances of discrimination or attempted

10

to show any pattern of past discrimination to put the County on notice of the need for accommodations.

Plaintiffs attempt to bypass the need to allege a pattern by alleging that Kevin Mendez, the responding officer, was delegated final policymaking authority. Doc. 1 ¶ 199. But other than Plaintiffs' single legal conclusion, there are no factual allegations that Officer Mendez had authority to "institute corrective measures on [the County's] behalf." *Ingram*, 30 F.4th at 1257 (quoting *Silberman*, 927 F.3d at 1134). Similarly, there are no allegations that Officer Mendez actually knew of the risk of failing to accommodate Dani based on past experiences.

In any case, Plaintiffs' proposed accommodations are again unreasonable. Plaintiffs include a laundry list of what the County, in hindsight, could have done to accommodate Dani. Doc. 1 ¶ 180-190. According to Plaintiffs, in responding to Mrs. Laubscher's call that Dani was suicidal, the County could have allowed EMTs on the scene, communicated differently, waited outside the home, called Dani on the telephone, called Dani's doctor, or called for help and try to buy time until other people arrived. *Id*. These requests are not reasonable accommodations for police encounters in quickly changing and exigent circumstances.

The Eleventh Circuit has explained that ADA accommodations for police encounters are relative to the circumstances of the encounter. In *Bircoll*, the Eleventh Circuit rejected a failure to accommodate claim premised on allowing for road-side interpreters to assist in DUI investigations and arrests of persons with disabilities. The Circuit held that "waiting for an oral interpreter before taking field sobriety tests is not a reasonable modification of police procedures given the exigent circumstances of a DUI stop on the side of a highway, on-the-spot judgment required of police, and the serious public safety concerning DUI criminal activity." 480 F.3d at 1086. Thus, the Eleventh Circuit held that based on the exigency of a DUI stop, waiting for an interpreter to arrive was not a reasonable accommodation.

Strikingly similar to the case at hand, in *Vila v. Miami-Dade Cnty.*, a plaintiff brought an ADA claim based on his arrest. The plaintiff was schizophrenic, and his parents contacted emergency services when they needed assistance subduing him. 65 F. Supp. 3d 1371, 1375 (S.D. Fla. 2014). The plaintiff alleged that the County should have responded by sending a crisis intervention unit instead of police. In *Vila* the court held, however, that failure to call and wait for a crisis intervention unit that was specially trained to deal with schizophrenic individuals does not constitute a viable ADA claim.

Here, Plaintiffs' claims are like those in *Bircoll* and *Vila*. Plaintiffs argue that the police should have done something differently in their encounter with Dani. Yet, this incident was one with exigent circumstances where first responders were required to use on-the-spot judgment with serious public safety concerns. Moreover, Plaintiffs proposed accommodations are unreasonable. The Court therefore should dismiss Plaintiffs' claims based on failing to accommodate Dani's disability.

## CONCLUSION

The Court should GRANT the County's motion and DISMISS Plaintiffs' claims WITH PREJUDICE.

Respectfully submitted this 24th day of June, 2024.

## LOCAL RULE 7.1D CERTIFICATE

This submission was prepared using Century Schoolbook 13-point font.

**HALL BOOTH SMITH, PC**

*/s/ R. David Ware*
R. DAVID WARE
Georgia Bar No. 737756
RUSSELL A. BRITT
Georgia Bar No. 391024
M. BLAKE WALKER
Georgia Bar No. 993236
*Attorneys for Defendant*

191 Peachtree Street, NE,
Suite 2900
Atlanta, Georgia 30303
(404) 954-5000
dware@hallboothsmith.com
rbritt@hallboothsmith.com
bwalker@hallboothsmith.com

## CERTIFICATE OF SERVICE

I certify that I filed the forgoing document with the Court's CM/ECF System, which will send electronic notification to all counsel of record.

**HALL BOOTH SMITH, PC**

*/s/ R. David Ware*
R. DAVID WARE
Georgia Bar No. 737756
*Attorney for Defendants*

191 Peachtree Street, NE,
Suite 2900
Atlanta, Georgia 30303
(404) 954-5000
dware@hallboothsmith.com

14